UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK A. TURLEY,

                            **Plaintiff,**

                v.                                          9:03-CV-1425
                                                                 (FJS/DRH)

**KAREN BRITTON, Mail Room Supervisor; and**
**JOSEPH COSTELLO, Superintendent,**

                            **Defendants.**
_____

**APPEARANCES**                                                    **OF COUNSEL**

**MARK A. TURLEY**
Bronx, New York 10457
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                          **MICHAEL G. MCCARTIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff seeks compensatory damages pursuant to 42 U.S.C. § 1983 for the alleged violation of his constitutional rights while he was incarcerated at Mid-State Correctional Facility. Specifically, Plaintiff claims that Defendants' rejection of his request to mail a letter to the State Department of Motor Vehicles ("DMV"), without paying the requisite postage, was an unconstitutional abridgement of his First Amendment rights. Plaintiff also contends that Defendants' action contravened Department of Corrections' Directives concerning the

"privileged" status of prisoners' correspondence with governmental agencies, allowing such materials to be mailed without paying postage.

Currently before the Court is Magistrate Judge Homer's Report-Recommendation and Order and Plaintiff's objections thereto.

## II. BACKGROUND

At all relevant times, Plaintiff was an inmate at Mid-State and Marcy Correctional Facilities. On or about July 28, 2003, while incarcerated at Mid-State Correctional Facility, he attempted to mail a letter to the DMV. The mail room at Mid-State Correctional Facility rejected the letter because Plaintiff had not paid the $.37 postage. *See* Deposition of Mark A. Turley dated December 20, 2004 ("Turley Tr.") at 20. On August 4, 2003, Plaintiff filed a grievance requesting that all outgoing mail to the DMV be classified as privileged because the DMV was a state agency. On August 28, 2003, Plaintiff was transferred from Mid-State Correctional Facility to Marcy Correctional Facility. *See* Turley Tr. at 16. Upon his arrival at Marcy Correctional Facility, the mail room mailed his letter to the DMV without charging him postage. *See id.* at 24-25.

On September 8, 2003, Plaintiff sent a letter to Defendant Britton, the mail room supervisor at Marcy Correctional Facility, asking her whether correspondence to the DMV would be classified as privileged. Defendant Britton responded that "DMV mail is not considered legal mail. However, we would not reject this mail. It would be processed as regular mail." *See* Complaint at Exhibit "2."

On September 23, 2003, Defendant Costello, the Superintendent at Mid-State

Correctional Facility, denied Plaintiff's grievance. *See* Complaint at Exhibit "3." Plaintiff appealed that decision; and, on October 15, 2003, the Central Office Review Committee ("CORC") accepted Plaintiff's request that outgoing correspondence to the DMV would be treated as privileged. *See* Complaint at Exhibit "4." CORC explained that "Directive #4421, Section 721.2, (d), does indicate that incoming mail from the Department of Motor Vehicles would not be processed as privileged correspondence, however, **outgoing mail to this Department would be treated as privileged correspondence and afforded the weekly free postage allowance per Directive #4421.**" *See id.* (emphasis added).

After receiving CORC's response, Plaintiff commenced this action on November 28, 2003. Defendants moved for summary judgment, and Plaintiff cross-moved for summary judgment. *See* Dkt. Nos. 34, 36. Magistrate Judge Homer issued a Report-Recommendation and Order on January 4, 2006, in which he recommended that this Court grant Defendants' motion with respect to Plaintiff's second cause of action, dismiss Plaintiff's first cause of action, and deny Plaintiff's cross-motion. *See* Dkt. No. 45. Plaintiff timely filed his objections to these recommendations. *See* Dkt. No. 46.

### III. DISCUSSION

**A.   Standard of review**

The district court reviews *de novo* those portions of the magistrate judge's report-recommendation and order to which a party objects, *see Singleton v. Caron*, No. 9:03-CV-00455, 2006 WL 2023000, *1 (N.D.N.Y. July 18, 2006) (citations omitted), and for clear error those portions to which a party does not object, *see Stokes v. Artus*, No. 05 Civ. 1975, 2006 WL

1676437, *2 (S.D.N.Y. June 14, 2006) (citation omitted). With these standards in mind, the Court will review Magistrate Judge Homer's recommendations in light of Plaintiff's objections.

### B. Plaintiff's First Amendment claim

It is well-established that "[t]o prevail on a claim under 42 U.S.C. § 1983, a plaintiff must "'show that [an] official, acting under color of state law, caused the deprivation of a federal right."'" *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (quotation omitted). Moreover, "[a] defendant's personal involvement in the alleged unlawful conduct is a prerequisite for a finding of liability in an action under 42 U.S.C. § 1983." *Bennett v. Hunter*, No. 9:02-CV-1365, 2006 WL 1174309, *4 (N.D.N.Y. May 1, 2006) (citations omitted). Thus, "[t]o prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant." *Id.* (citation omitted). Finally, when the defendant is a supervisor, "mere 'linkage' to the unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in the unlawful conduct." *Id.* (citations omitted). Instead, to show that a supervisor was personally involved in the alleged constitutional violation, the plaintiff must establish that the supervisor

> (1) directly participated in that violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) been [sic] grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.

*Id.* (citations omitted)

It is equally well-established that inmates "have a First Amendment right of access to the courts . . . ." *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, *4 (S.D.N.Y. Mar. 29, 2001) (citation omitted). They also have a First Amendment "right to 'the free flow of incoming and outgoing mail.'" *Johnson*, 445 F.3d at 534 (quotation omitted). Moreover, "'[i]n balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail.'" *Id.* (quotation omitted).

"To state a valid § 1983 claim for denial of access to the courts due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action." *Cancel*, 2001 WL 303713, at *4 (citation omitted). Thus, "to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Id.* (citation omitted). As the court explained, "'the plaintiff must show that a "non-frivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials.'" *Id.* (quotation and other citation omitted).

Alternatively, a plaintiff may bring a claim under the First Amendment involving non-legal mail based upon his right of free speech to send and receive mail. *See id.* at *5 (citation omitted). "[A] prison official's interference with an inmate's mail may violate his First Amendment right to free speech, which includes the 'right to be free from unjustified governmental interference with communication.'" *Id.* (quotation omitted). Although "[t]he boundary between an inmate's First Amendment right to free speech and the ability of prison officials to open or otherwise interfere with an inmate's mail is not precise[,] . . . when analyzing

-5-

such claims courts have consistently made distinctions between outgoing and incoming mail and legal and non-legal mail based on the various rights and interests at stake." *Id.* (citations omitted).

Regarding the distinction between incoming and outgoing mail, "the Supreme Court has recognized that 'the implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.'" *Id.* (quotation omitted). Thus, "the penological interests for interference with outgoing mail must be more than just the general security interest which justifies most interference with incoming mail." *Id.* (citation omitted).

Finally, with regard to the distinction between legal and non-legal mail, "many courts have held that a prisoner's legal mail is entitled to a higher degree of protection than his regular mail." *Id.* at *6 (citations omitted). Thus, "prison policies or practices which interfere with legal mail on a regular basis whether incoming or outgoing must be supported by a legitimate penological interest other than mere general security concerns which permit interference with regular mail." *Id.* (citation omitted).

In his second cause of action, Plaintiff contends that Defendants deprived him of his First Amendment right "to have his mail properly forwarded by prison officials." *See* Complaint at 5.[1] Plaintiff alleges further that his "letter [to the DMV] was properly labeled, which is adequate foundation, to show that, customary mail room practice, in mailing such was required, however, defendant's intent (actual) was to forbid the 'DMV' letters as privileged and to treat [them] under

---

[1] It is not entirely clear whether Plaintiff is alleging that his letter to the DMV is legal mail or not and, thus, it is not clear whether he is asserting a denial-of-access-to-the-courts claim or a free-speech claim under the First Amendment, or both.

general outgoing correspondence procedures, which is a deliberate wrong." *See id.*

### *1. Plaintiff's First Amendment claim against Defendant Britton*

The gravamen of Plaintiff's First Amendment claim is that, while he was incarcerated at Mid-State Correctional Facility, Defendants refused to consider his letter to the DMV "privileged" and, thus, refused to mail it without payment of postage. Defendant Britton, however, does not work at Mid-State Correctional Facility. Rather, at all relevant times, she was the mail room supervisor at Marcy Correctional Facility. Therefore, she had nothing to do with the Mid-State Correctional Facility's mail room's refusal to mail Plaintiff's letter to the DMV without postage.

Moreover, once Plaintiff was transferred to Marcy Correctional Facility, the mail room at that facility mailed his letter to the DMV, without requiring him to pay the postage. Although Defendant Britton responded to Plaintiff's inquiry about outgoing mail to the DMV by noting that the mail room would not consider such mail legal mail, Plaintiff does not allege that any one at Marcy Correctional Facility, including Defendant Britton, ever refused to mail his letters to the DMV.

Accordingly, because Plaintiff has not shown either that Defendant Britton was personally involved in the alleged violation of his First Amendment rights or that there was any connection between Defendant Britton's conduct and the alleged violation, the Court adopts Magistrate Judge Homer's recommendation and grants Defendants' motion for summary

judgment with respect to Plaintiff's First Amendment claim against Defendant Britton.[2]

### *2. Plaintiff's First Amendment claim against Defendant Costello*

Defendant Costello was the Superintendent at Mid-State Correctional Facility at the time that the mail room at that facility refused to send Plaintiff's letter to the DMV without payment of postage. He also denied Plaintiff's grievance regarding this refusal; however, he did so **after** Plaintiff had been transferred to Marcy Correctional Facility and that facility had mailed his letter to the DMV. Therefore, even if the Court construes Plaintiff's letter as legal mail, Plaintiff's claim fails because he has not alleged that he suffered any actual injury as a result of Defendant Costello's actions.

Alternatively, if the Court treats Plaintiff's letter to the DMV as non-legal mail, with which prison officials cannot interfere without a valid penological reason, neither Defendant Costello, nor any of his subordinates, interfered or tampered with Plaintiff's mail. Plaintiff does not allege that any one in the mail room opened his mail, held it without mailing it, or took any other adverse action. Nor does Plaintiff contend that the mail room would have refused to mail his letter had he supplied the appropriate postage. Rather, the gravamen of his complaint is that the mail room refused to mail his letter unless he supplied the necessary postage; as such his allegations are insufficient to state a First Amendment violation because, as the Second Circuit

---

[2] The Court also notes that the grievance that Plaintiff filed prior to commencing this law suit concerns the refusal of the Mid-State Correctional Facility mail room to mail his letter to the DMV without payment of postage. Therefore, to the extent that Plaintiff is attempting to assert a claim against Defendant Britton based upon her response to his letter regarding mailing policies at Marcy Correctional Facility, it does appear that Plaintiff has exhausted his administrative remedies with respect to his claim against Defendant Britton.

recently held in *Johnson*, an inmate "does not have a constitutional right to free postage for non-legal mail . . . ." *Johnson*, 445 F.3d at 533. Accordingly, the Court adopts Magistrate Judge Homer's recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's First Amendment claim against Defendant Costello.

### C.     Plaintiff's state-law claim

Section 1367 of Title 28 of the United States Code provides, in pertinent part, that "(a) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c).

The gravamen of Plaintiff's first cause of action is that, irrespective of whether Defendants violated his First Amendment rights, as he alleges in his second cause of action, they violated DOCS' Directive 4421 by refusing to consider his outgoing correspondence to the DMV as privileged and, thus, affording it the weekly free postage allowance. This claim is clearly based upon state-law and arises from the same controversy as his second cause of action, over which this Court has original jurisdiction; therefore, the Court may exercise supplemental jurisdiction over this claim. Nonetheless, because the Court has granted Defendants' motion for summary judgment with respect to Plaintiff's constitutional claim, it declines to exercise its jurisdiction over this state-law claim. Accordingly, the Court adopts Magistrate Judge Homer's

recommendation and dismisses Plaintiff's first cause of action without prejudice.[3]

## IV. CONCLUSION

After carefully considering Magistrate Judge Homer's January 4, 2006 Report-Recommendation and Order, Plaintiff's objections, the relevant parts of the record, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Homer's Report-Recommendation and Order dated January 4, 2006, is **ACCEPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff's second cause of action is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's first cause of action is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c); and the Court further

---

[3] To the extent that Plaintiff is concerned that, if this Court dismisses his first cause of action, he will not be able to pursue that claim in state court because it would be time-barred, he need not worry. He may pursue that claim in state court because "[t]he period of limitations for any claim asserted under subsection (a), . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, Plaintiff will have thirty days after the Court dismisses his state-law claim without prejudice to file an action in state court based upon Defendants' alleged violation of DOCS' Directive 4421.

**ORDERS** that Plaintiff's cross-motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: February 24, 2007
       Syracuse, New York

                                  Frederick J. Scullin, Jr.
                                  Senior United States District Court Judge